UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DUANE CHUDY,

              Plaintiff,

v.                                                                     Case No. 23-cv-0005-bhl

CHUDY GROUP, LLC d/b/a TCGRx,
TARGA BUYER, LLC, and
PEMBROKE ACQUISITIONS, LLC f/k/a
TARGA PARENT HOLDINGS, LLC

              Defendants.

## ORDER DENYING MOTION TO DISMISS

In this lawsuit, Duane Chudy claims Defendants TCGRx, Targa Buyer LLC (Targa) and Pembroke Acquisitions, LLC (Pembroke) breached their obligations to him under an employment agreement (Agreement) that he signed when he sold TCGRx to Targa. More specifically, Chudy claims Defendants breached both the plain terms of the Agreement and the implied duty of good faith and fair dealing when they refused to provide him a sufficient portion of the equity award offered to TCGRx management. Defendants have moved to dismiss, insisting the plain terms of the Agreement made any equity award discretionary, defeating Chudy's claims as a matter of law. They also claim that Chudy's implied duty of good faith claim fails because it is duplicative of his breach of contract theory. Last, they contend that Chudy has no claims against Targa and Pembroke because neither company signed the Agreement.

Given the record and procedural posture of the case, Defendants' motion will be denied. While Defendants' position has strong support in the Agreement, other language undercuts their arguments and could support Chudy's claim. Moreover, even if awarding equity was discretionary, as Defendants insist, the Agreement's terms and the implied covenant both required Defendants to exercise that discretion in a reasonable fashion. Whether they have done so cannot be resolved on the pleadings. Finally, because Defendants concede that Targa and Pembroke had obligations under the Agreement, Chudy's claims against those defendants will be allowed to

proceed as well. The Court simply cannot conclude at the mere pleadings stage that Chudy's claims are necessarily without merit.

## BACKGROUND[1]

Duane Chudy is the founder of the self-named Chudy Group, also known as TCGRx. (ECF No. 1-2 ¶¶1–2, 7.) TCGRx is a small pharmaceutical automation business with its principal place of business in Pleasant Prairie, Wisconsin. (*Id.* ¶2.) TCGRx is organized as a Delaware limited liability company. (*Id.*)

On July 7, 2017, Chudy sold TCGRx to Targa Buyer and Frazier Holdings, LLC. (*Id.* ¶9.) Targa Buyer is a subsidiary of Pembroke Acquisitions, LLC (formerly known as Targa Parent), and both are Delaware limited liability companies with principal places of business in Seattle.[2] (*Id.* ¶¶3–4, 9.) Frazier Holdings is also a limited liability company and is itself a holding company for a fund and an affiliate of Frazier Healthcare. (*Id.* ¶9.)

After the sale, Chudy remained CEO of TCGRx pursuant to a written employment agreement (Agreement). (*Id.* ¶¶11–12.) As relevant to the current dispute, Section 4.2 of the Agreement states that:

> During the Period of Employment, the Executive *shall* be *eligible* in the Board's *discretion* to participate in equity incentive unit grants or equity award plans offered by the Company Group to executives in accordance with the terms of such plans and applicable equity award agreements. *Without limiting the generality of the foregoing, subject to approval* of such equity incentive unit grants or equity award plans *by the board of managers of Parent*, Executive *will be entitled* to an award representing *approximately* 30% of the equity interests made available to management, which are intended to be structured as profits interests ("Profits Interests"), *subject to adjustment* for such factors *as the Board may deem necessary or appropriate in its sole reasonable discretion*. Executive's Profits Interests will be subject to a four (4) year vesting schedule, with twenty-five percent (25%) of such interests vesting on the first anniversary of the Effective Date, and the balance thereof vesting thereafter in thirty-six (36) substantially equal consecutive monthly increments. Immediately prior to the effective date of an Exit Event (as such term is to be defined in the [Targa Parent] LLC Agreement), 100% of all then-unvested Profits Interests then held by Executive

---

[1] This Background is derived from Chudy's complaint, ECF No. 1-2, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).
[2] The parties both refer to Pembroke as Targa Parent.

> will automatically accelerate and become vested and will no longer be subject to forfeiture.

(*Id.* ¶20) (emphasis added). The parties offer conflicting interpretations as to which company's "Board" is referenced in this provision. Chudy maintains that the Board refers to Targa Parent's Board, and not TCGRx's. (ECF No. 13 at 12.) But the Agreement itself defines Board as TCGRx's Board. (*See* ECF No. 1-2 at 21.) At oral argument, Defendants conceded that the Board referenced is not TCGRx's board. (ECF No. 17 at 29–30.)

A few months after the Agreement was signed, Targa sent Chudy (through counsel) a draft Value Unit Grant Agreement pursuant to which Chudy would receive grants of equity units in Targa, as contemplated in Section 4.2 of the Agreement. (*Id.* ¶21.) The draft was incomplete, however. It omitted key terms including the number of units in Targa that were to be issued. (*Id.* ¶22.) The draft was never executed. (*Id.* ¶24.)

Several months later, in June 2018, Targa granted equity units, called Mirror Value Units, to its management. (*Id.* ¶26.) Despite the Agreement term stating that Chudy was to receive "approximately 30% of the equity interests made available to management" Chudy was offered only 15% of the "total pool" of these Mirror Value Units. (*Id.* ¶¶27–29.) He was told that TCGRx was hiring a new CEO, Rob Kill, who would replace Chudy, and that Kill would receive the other half of the 30% of the Mirror Value Units. (*Id.* ¶32.) Believing this offer to be inconsistent with the Agreement, Chudy refused to sign the Value Units Award Agreement. (*Id.* ¶¶33–34.)

On December 11, 2018, Chudy notified TCGRx he was resigning, effective January 11, 2019. (*Id.* ¶37.) He was then sent a draft resignation agreement that again offered him approximately 15% of the management Mirror Value Units in Targa. (*Id.* ¶¶38–40.) Chudy again refused to sign the resignation agreement, insisting it was inconsistent with the Agreement. (*Id.* ¶41.) Thereafter, he continued to rebuff repeated efforts to negotiate a lower percentage participation in the equity grant. (*Id.* ¶¶42–47.) Defendants then took the position that Chudy was no longer entitled to *any* percentage of the equity grant and unilaterally declared Section 4.2 of the Agreement void. (*Id.* ¶47.)

On July 15, 2022, Targa was acquired by Becton Dickinson for more than $1.5 billion. (*Id.* ¶55.) Because Chudy did not receive any portion of the Mirror Value Unit grant in Targa, he did not share in any of these substantial sale proceeds. (*Id.* ¶56.) On December 2, 2022, Chudy sued TCGRx, Targa, and Pembroke, seeking damages for their alleged breach of both Section 4.2 of the Agreement and the implied duty of good faith and fair dealing. (*Id.* ¶¶61–71.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

The parties vigorously dispute the appropriate interpretation of Section 4.2 of the Agreement. Citing portions of Section 4.2, including its "shall be entitled" language, Chudy claims the Agreement mandates that Defendants provide him with approximately 30% of the value units offered to management. He argues that Defendants breached these plain terms and the implied duty of good faith when they failed to grant him that amount and instead tried to negotiate a lower percentage. Defendants, on the other hand, rely on other, permissive language in Section 4.2 to argue that Chudy's claim fails as a matter of law. Because the Agreement contains both mandatory and permissive language, the parties' dispute simply cannot be resolved at the pleadings stage. Chudy has alleged enough facts to state claims for both breach of contract and breach of the implied duty of good faith. And because Defendants concede that Targa and Pembroke undertook obligations to Chudy in the Agreement, his claims against those defendants will also survive Defendants' motion.

**I.  Chudy Has Sufficiently Pleaded a Breach of Contract and a Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Under New York law,[3] a party suing for breach of contract must allege: "(1) the existence of an agreement; (2) adequate performance of the contract by the party bringing the claim; (3) breach of contract by the other party; and (4) damages." *Am. Steamship Owners Mut. Protection*

---

[3] The Agreement provides that it is governed by New York law and the parties agree that New York law governs this dispute. (ECF No. 1-2 at 38–39; ECF No. 8 at 2; ECF No. 13 at 3 n.1.)

*& Indem. Ass'n, Inc. v. Carnival PLC*, No. 21-cv-10641 (PAC), 2022 WL 4467572, at *2 (S.D.N.Y. Sept. 26, 2022) (citation omitted). Plaintiff must also establish offer, acceptance of offer, consideration, mutual assent, and intent to be bound. *Id.*

The parties do not dispute most of these elements. Chudy has alleged and Defendants do not challenge that the Agreement existed and was binding between the parties. (*See* ECF No. 1-2; ECF No. 8 at 10.) Defendants instead contend that Chudy's claims fail because they did not commit a breach as a matter of law. In particular, Defendants argue that the contract did not entitle Chudy to receive any equity award and the Board did not exercise its discretion arbitrarily or irrationally. (ECF No. 8 at 4, 6, 10, 12.)

In interpreting a contract, the Court should "interpret[] the agreement as a whole, applying plain meaning to all of its language, attempting to effectuate the commercial understanding of the parties, and avoiding interpretations that would render language surplusage or the promises contained in the agreement illusory." *Town & Cntry. Linen Corp. v. Ingenious Designs, LLC*, 556 F. Supp. 3d 222, 285 (S.D.N.Y. 2021) (interpreting NY law, collecting cases). As described above, the Agreement provides both permissive and mandatory language regarding Chudy's right to certain executive equity awards. (ECF No. 1-2 ¶20.) Chudy focuses on the mandatory language in the contract, arguing he was entitled to some equity award that resembled approximately 30% of the equity interests, and whatever discretion the Board had did not allow them to refuse an award of any value units altogether. (ECF No. 13 at 5, 7.) For their part, Defendants emphasize the permissive language, noting Chudy's "eligibility" in the Board's "discretion" for a value unit award. (ECF No. 8 at 8.)

The main dispute is thus whether the Board acted reasonably in exercising their "sole reasonable discretion." Contracts that "contemplate[] the exercise of discretion … include[] a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. Ct. App. 1995). Thus, courts must "examine the contract as a whole to determine, based on its language, whether the unfettered exercise of discretion would deprive a party of the fruits of the agreement and render a contractual promise illusory." *S. Telecom. Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 507 (S.D.N.Y. 2021) (citing *Moran v. Erk*, 901 N.E.2d 187 (N.Y. 2008)).

Chudy alleges that the Board acted "per se unreasonabl[y]" when it refused to grant him any value units. (ECF No. 1-2 ¶¶48–49.) In particular, he alleges that Defendants, after sending

the blank equity award agreement, sent an agreement reducing his award by more than half without explanation. (*See* ECF No. 13 at 6; ECF No. 1-2 ¶¶26–30.)

Defendants explain that TCGRx hired another CEO and split the management equity award between that new CEO and Chudy, giving them both 15 percent of the value units. (ECF No. 8 at 5.) In their view, this was an exercise of the Board's sole reasonable discretion. (*Id.*) This may be true. But Chudy is entitled to discovery to determine whether this explanation is accurate, and whether Defendants acted reasonably, arbitrarily, or irrationally. It is also possible that discovery will show that the Board's discretion was reasonable. While courts typically defer to a board's determination of what is reasonable, Chudy has alleged enough to survive at this stage of proceedings. Defendants' motion to dismiss the breach of contract claim must therefore be denied.

## II. Chudy Has Also Sufficiently Pleaded a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendants' challenge to Chudy's good faith and fair dealing claim fails for similar reasons. The exercise of reasonable discretion goes hand-in-hand with the implied covenant of good faith. Defendants argue that New York law does not recognize a separate cause of action for breach of the implied covenant unless the allegations underlying that claim are different from the breach of contract claim, and here, Chudy's allegations underlying both causes of action are the same. (ECF No. 8 at 14–15.)

Defendants are correct that in New York, a breach of this duty is typically not an independent cause of action. *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 300 (S.D.N.Y. 2009) (dismissing covenant of good faith and fair dealing claim) (citing *Dalton*, 663 N.E.2d at 291-92). Instead, the duty is implied in all New York contracts, making a breach of the implied covenant "merely a breach of the underlying contract." *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 572 (E.D.N.Y. 2015). However, if the allegations pleaded go beyond a mere restatement of the contract breach by alleging different conduct breached this duty, the claim may survive. *See Fishberg v. State Farm Fire & Cas. Co.*, No. 20-cv-6664 (LJL), 2021 WL 3077478, at *3 (S.D.N.Y. July 20, 2021) (allowing cause of action for breach of implied covenant of good faith and fair dealing to survive motion to dismiss where premised on process of how the defendant denied insurance coverage, and denial of insurance coverage was first cause of action).

As discussed above, at this stage of the proceedings, Chudy's allegations are enough to survive a motion to dismiss on this claim. Chudy alleges that by "attempting to force Chudy to renegotiate the terms of his employment," "unilaterally rewriting the terms of his employment"

and "otherwise failing to perform as agreed," Defendants breached the implied duty of good faith. (ECF No. 1-2 ¶70.) While Chudy's allegations supporting a breach of the implied duty of good faith and fair dealing are quite similar to his allegations for Defendants' breach of contract, the allegations appear to go beyond a mere restatement of the contract breach. This is all that is required of Chudy to survive a motion to dismiss. *See Fishberg*, 2021 WL 3077478, at *3.

### III. The Complaint Sufficiently Alleged that Targa and Pembroke Have Manifested an Intent to Be Bound by the Agreement.

Defendants argue that Targa and Pembroke should be dismissed because they are not parties to the Agreement. (ECF No. 8 at 15.) They point to allegations in the complaint that identify TCGRx and Chudy as the only parties to the Agreement. (ECF No. 1-2 ¶14).

In response, Chudy maintains that non-parties who take affirmative obligations in an agreement may be bound to that agreement. (ECF No. 13 at 12.) And he points out that Targa and Pembroke have affirmative obligations under the Agreement, like offering Chudy to continue as CEO after the acquisition and negotiating the terms of the Agreement. (*Id.* at 11; ECF No. 1-2 ¶¶9–12.)

It is uncontroversial that "non-parties ordinarily cannot be held liable for a breach of contract." *Horowitz v. Spark Energy, Inc.*, 19cv7534 (PGG) (DF), 2020 WL 6561600, at *7 (S.D.N.Y. July 31, 2020) (quoting *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16cv3787 (DAB), 2017 WL 2304302, at *2 (S.D.N.Y. May 18, 2017)). It is also clear, however, that a contract can be enforced against a non-party where (1) the contract is signed by the party's agent, (2) the contract is assigned to the party, (3) the signatory is the 'alter ego' of the party, or (4) the "non-party manifests an intent to be bound by the contract." *Malmsteen v. Univ. Music Grp., Inc.*, 940 F. Supp. 2d 123, 135–36 (S.D.N.Y. 2013). An intent to be bound can be inferred "from the parent's participation in the negotiation of the contract, or if the subsidiary is a dummy for the parent, or if the subsidiary is controlled by the parent for the parent's own purposes." *Id.* (quoting *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009).

Chudy alleges that Targa, a subsidiary of Pembroke, bought TCGRx in July 2017. (ECF No. 1-2 ¶9.) He also alleges that both Targa and Pembroke induced Chudy to remain TCGRx's CEO prior to the companies acquiring TCGRx, and that because of that acquisition, both Targa and Pembroke acceded to the obligations of the Agreement. (*Id.* ¶¶10, 15.) Most importantly, counsel admitted at oral argument that the "Board" referred to in the Agreement is not TCGRx's Board, creating an inference that another party—Targa and/or Pembroke—has manifested an

intent to be bound by the contract. *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 22 Civ. 5276 (PAE), 2023 WL 2746031, at *12 (S.D.N.Y. Mar. 31, 2023) ("Therefore, an enforceable contract exists where a party's 'overall conduct reflects its intent to be bound,' even where the party did not sign the offer.") (quoting *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 271 n.6 (S.D.N.Y. 2022)).

If Chudy proves that Targa and Pembroke have assumed obligations under the contract once they acquired TCGRx—like offering Chudy the CEO position and negotiating his Agreement—they would be appropriate parties to this case despite their status as non-signatories. *See MBIA Ins. Corp.*, 706 F. Supp. 2d at 397. Defendants' motion to dismiss Targa and Pembroke as parties is thus likewise denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss, ECF No. 7, is **DENIED**.

Dated at Milwaukee, Wisconsin on July 18, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge